West, J.
This action was tried, on submission to the court, at the January term, a. d., 1868, of the Mahoning common pleas, on an agreed statement of facts, and two depositions offered by the plaintiffs in error ; all of which evidence was, by bill of exceptions, incorporated into the record, and is now before this court. Judgment having-been entered against the plaintiffs in error, and a motion by them for a new trial, because 1st, the judgment was against the law; 2d, was not sustained by the evidence; and 3d, ought to have been for and not against them, having been overruled, the cause was removed by petition in error into the district court of Mahoning county, whence, for want of time to conclude its hearing, it was taken to the district court of Portage county, wherein it was reserved for decision in this court.
The record shows that on the 25th September, 1866, Babcock & Co., merchants of New York, sold on credit and consigned in the ordinary way to the address of “ Geo. T. Hull, Youngstown, Ohio, A. & G. W. R. R,” goods agreed, on the trial, to be of the value of $1,618.77, which, on the 3d of October, 1866, arrived at the Youngstown station and were transferred by the railroad company’s agent to its freight depot, where, in the evening of the same day, they were seized in attachment, the charges thereon paid, and the goods thence removed by the plaintiffs in error, then sheriff and deputy sheriff of Mahoning county, at the suit of sundry creditors of Hull, a retail merchant of Youngstown, who, pending the transit of the goods, had become insolvent.
Merchandize consigned to Hull was usually called for at this depot, the charges paid thereon, and it carted and delivered to Hull, at his place of business, by draymen, with *292 out special directions from him. At the time the goods in controversy were seized, Hull had no knowledge of their arrival and had given no directions in regard to them; nor had any drayman or other person called for or demanded them. They were awaiting the payment of charges as a condition precedent to their transfer and removal by dray-men to Hull’s place of business. No one having charge of the freight-depot, custody of the goods, or in the employment of the railroad company, had been constituted an agent of Hull.
The attorney of Babcock & Co., without their knowledge, and before either had learned that the possession of the goods had not passed in fact to Hull, commenced in action against him in Trumbull county for their purchase price,, which, however, has not been prosecuted.
On the 8th of October, 1866, Babcock & Co. asserted their right of stoppage in transitu by making demand of the railroad company, and, afterwards, of the plaintiffs in error, and on the 12th of October commenced this action.
These facts do not distinguish the case from the usual consignments of goods sold in the ordinary coui'se of business between merchants. Several errors are assigned on the record, but the admirable and exhaustive arguments of counsel are chiefly — that of the plaintiffs in error exclusively— to the one involving the doctrine of stoppage in transitu, which will first be considered.
I. (1) For the plaintiffs in error it is insisted, in effect, that if the facts in the case show the vendor’s right of stoppage not to have been extinguished under the rule hitherto recognized, the novel method of modern transportation demand that such restrictive modifications be engrafted thereon as will work its extinguishment.
This cannot be conceded. The right of stoppage in transitu is regarded with so much favor that the rule governing it will not be subjected to restrictions less liberal than those of immemorial prescription.
(2) It is further contended, however, that a rational application of the principles on which the rule is founded, to *293 existing methods of the carrying trade, will hold the arrival of goods, transported by railway, at the station designated for their discharge, the termination of their transit, and, consequently, of the right of stoppage.
This proposition is also untenable, either on authority or reason. The transit of goods consigned in the usual general terms, by a vendor on credit, is terminated and his right of stoppage extinguished only when their possession is voluntarily and actually transferred to the vendee, or to his agent. But the carrier of goods thus consigned, and all middlemen into whose custody they pass in furtherance and virtue of the consignment, are, by implication of law, constituted agents of the vendor, not of the vendee. Therefore the transfer of goods consigned, as in this case, from the coaches of the carrier by railway to his freight-depot or warehouse at the station designated for their discharge, in the vicinity of the vendee’s residence or place of business, there to await the payment by him of the charges thereon, as a condition precedent to their removal to and delivery at his business house, does not ipso facto constitute a transfer or delivery of possession to him, or to any one as agent of and for him; but is the reasonable exercise of a right and duty by the carrier, in the course and furtherance of their transit, referable to and in virtue of his original employment by and as agent of the vendor to transport and deliver. Wherefore, until the vendee in person, or his agent under and for him, shall become custodian in possession, neither the transit of the goods nor the vendor’s right of stoppage will be held to have terminated.
It is not intended to intimate that the middleman may not become the agent of, and, as such, the custodian holding possession under and for the vendee. But such agency will not be implied from the carrier’s original employment, and can arise only by showing affirmatively some arrangement or understanding to that effect other than the general words of an ordinary consignment. No such arrangement or understanding is disclosed by the evidence in this case. The ■custody of the goods, at the time of their seizure in the car *294 rier’s depot, was, therefore, in the agent of the vendor, whose right of stoppage was consequently subsisting in full vitality at that date.
II. The seizure of goods in transitu, at the suit of the consignee’s creditors, does not extinguish the vendor’s right of stoppage, but furnishes' him a cause of action for them or their valué ágainst the officer making the seizure, which will be enforced, if asserted in due time.
III. The commencement of an action against the vendee by the attorney of the vendor of goods on credit, for their purchase price, without the vendor’s knowledge, and before either has been apprised that their transitus has not terminated, does not constitute a waiver of the right of stoppage, if it be asserted in a reasonable time, and the action for their price be not pressed ; which the record shows to have-been the facts in this case.
IY. The cause of action upon which judgment was rendered by the common pleas against the plaintiffs in error, sounded in tort, upon which it was not competent to award interest at a rate exceeding six per centum per annum.. Wherefore so much of tbe judgment of the common pleas as awards interest thereon after its rendition at seven per cent-um, will be annulled, and the judgment to this extent modified, at the costs of the defendants in error; and as to the-residue, will be affirmed and remanded for execution.
Judgment accordingly.
Welch, C. J., and White, Day and McIlvaine, JJ., concurred.